[Civ. No. 4243. Third Appellate District.—September 26, 1931.]

N. E. McCLORY, Respondent, v. JONATHAN S. DODGE et al., Appellants.

H. L. Carnahan, Harry Povey, Person & Rogers, Edmund H. Hinshaw, Howard R. Hinshaw and Raymond Tremaine for Appellants.

Joseph S. Campbell for Respondent.

PRESTON, P. J.—Plaintiff and respondent N. E. McClory brought this action to recover the value of certain shares of stock which he claims had been secured from him under an illegal contract and by fraudulent representations.

The case was tried before the court without a jury and resulted in a judgment in favor of plaintiff and against all of the defendants. From this judgment the defendants Dodge, Harrison, Welch, Hunter and Griffis have appealed. Hool and Boyd did not appear at the trial and judgment was entered against them by default and they have not appealed.

The facts necessary for a correct understanding of the questions involved may be thus briefly stated: The Federal Securities Corporation was a stock brokerage house in Los Angeles, buying and selling stocks generally, but particularly the stock of the Union Mortgage Company. Its principal

agent and salesman was one R. G. Boyd. Commencing in June, 1923, and continuing from time to time until April, 1924, respondent had purchased through Boyd 13,000 shares of the preferred stock of the Union Mortgage Company, for which he had paid the total sum of $13,000. About the 1st of May, 1924, James A. Hool, the then president. of the Federal Securities Corporation, wired respondent, who resided in San Diego, that Boyd was coming to San Diego, representing the Federal Securities Corporation, and would "have something very important", to discuss with him. Pursuant to this arrangement Boyd and respondent met in San Diego. At this meeting Boyd made a proposition to respondent to give him a certain number of shares of the preferred and common stock of the Federal Securities Corporation, the number not being stated, for the 13,000 shares of the Union Mortgage Company owned by respondent, informing him that the stock of the Federal Securities Corporation would be delivered to him as soon as a permit for its issuance could be secured from the corporation commissioner, for which an application had been made, and that this permit would be issued in a short time. Respondent accepted the proposition of Boyd and delivered to him his 13,000 shares in the Union Mortgage Company. Boyd gave respondent a typewritten sheet of paper, termed by respondent as a "subscription"; the exact wording of this document is not revealed by the record. Boyd delivered respondent's 13,000 shares of the preferred stock of the Union Mortgage Company to Hool, the president of the Federal Securities Corporation, who turned said shares into the Federal Securities Corporation and said corporation, Federal Securities Corporation, afterward sold the stock of respondent to various persons and received and retained the money therefor. The corporation commissioner refused to grant the Federal Securities Corporation a permit. Thereafter, and on October 14, 1925, Boyd again called upon the respondent and gave him a note, dated May 10, 1924, signed by James A. Hool personally for $13,000 and took from respondent the so-called receipt or "subscription", stating to respondent at the time that the note was to act as a substitute for the "subscription" blank, as the corporation commissioner objected to the Federal Securities Corporation taking the "subscription". Respondent was told by Boyd that note

could and would be exchanged for the shares of stock in the Federal Securities Corporation, when that corporation obtained the permit to issue stock.

The Federal Securities Corporation paid respondent interest on this note every month from May 1 to December 1, 1924. In the month of February, 1925, the Federal Securities Corporation was adjudged a bankrupt. Shortly thereafter Hool was also adjudged a bankrupt. The Hool note was never paid and respondent never received anything for his stock in the Union Mortgage Company, save and except the interest above set forth, which amounted to $624.

Hool, Hunter and Griffis, three of the defendants, were directors of the Federal Securities Corporation from a time at least several months prior to May 1, 1924, and until after October 14, 1924. James M. Welch, another defendant, became a director on the first or second of May, 1924, but resigned and severed his connection with said corporation the latter part of August, 1924, or the first of September. Jonathan S. Dodge and Hyman Harrison, two other defendants, admit by their answer that they were directors on and after May 9, 1924. All the appealing defendants were directors and in control of the affairs of the Federal Securities Corporation when respondent's stock was sold and they authorized and directed the sale thereof to various individuals. All the proceeds of these various sales were used by these defendants in the operation of the business of the Federal Securities Corporation.

There can be no question but that the stock transaction between Boyd and respondent was in direct violation of the California Corporate Securities Act, and, therefore, void. (Stats. 1917, p. 673; Act 3814, Deering's General Laws of 1923.) Section 3 of said act provides in part: "No company shall sell, . . . or offer for sale, negotiate for the sale of, or take subscriptions for any security of its own issue until it shall have first applied for and secured from the commissioner a permit authorizing it so to do." Section 12 of the act renders void any securities issued in violation of the statute. (See, also, *Castle* v. *Acme Ice Cream Co.,* 101 Cal. App. 94 [281 Pac. 396]; *Tatterson* v. *Kehrlein,* 88 Cal. App. 37 [263 Pac. 285, 291]; *Livestock Co.* v. *Tracy,* 208 Cal. 205 [281 Pac. 50].)

In *Tatterson* v. *Kehrlein, supra,* the court said: "The penalties prescribed by the Corporate Securities Act being all laid on the seller and none on the buyer, and the statute being for the benefit and protection of buyers, the parties are not *in pari delicto,* and *the buyer may have judgment for the money paid out by him under the illegal contract.*"

Therefore, respondent having parted with his property under an illegal contract and not being *in pari delicto* and the illegal contract remaining purely executory, has a right to recover his property in an action for money had and received. And, under such circumstances, the law implies a promise to refund it. (*Smith* v. *Bach,* 183 Cal. 259 [191 Pac. 14]; *Smith* v. *Bach,* 54 Cal. App. 236 [201 Pac. 611]; *Wasserman* v. *Sloss,* 117 Cal. 425 [59 Am. St. Rep. 209, 38 L. R. A. 176, 49 Pac. 566]; *National Stone Tile Corp.* v. *Voorheis,* 93 Cal. App. 739, 753 [270 Pac. 286]; *Rose* v. *Foord,* 96 Cal. 152 [30 Pac. 1114]; *California Credit etc. Corp.* v. *Goodin,* 76 Cal. App. 785, 792 [246 Pac. 121]; *Almquist* v. *Garner,* 53 Cal. App. 305 [200 Pac. 76].)

The rule is also well settled in this state that one who has been induced by fraud to part with property, receiving nothing in return, will be entitled to recover the full value of what he has thus given. (*George Cople Co.* v. *Hindes,* 34 Cal. App. 580 [170 Pac. 155].)

Appellants admit that Federal Securities Corporation, which is now bankrupt, owes respondent for his stock, but strenuously contend that even though they were directors and in control of the affairs of the Federal Securities Corporation when respondent's stock was sold, directed the sale thereof and received the money therefor, and used the same for the benefit of the Federal Securities Corporation, still they are not personally liable for the reason that they had no knowledge of the acts and conduct of Boyd in securing possession of respondent's stock in the first instance, and were not directors when the Federal Securities Corporation secured the stock from respondent through Boyd and Hool.

From all the facts and circumstances surrounding the entire transaction, we are unable to agree with this contention of appellants. Boyd was the agent of the Federal Securities Corporation. Respondent gave him (Boyd) his property to be used by that corporation *for a certain pur-*

*pose, to wit, in exchange for stock in the Federal Securities Corporation.* The stock was still the property of the respondent; the title was still in him until the exchange was made according to respondent's instructions. The Federal Securities Corporation, as long as it retained possession of this stock and did not apply it according to the instructions of respondent, held it purely as the agent of respondent. Respondent placed his stock in the hands of the Federal Securities Corporation for the single purpose of exchanging it for stock in that corporation. When they took it and converted the proceeds to their own use, they violated their trust and were guilty of at least misappropriating respondent's stock. Such an act was a tort, for which all persons concerned could be held personally liable. Respondent's stock was sold on May 15 and 16, 1924, when all of the appellants were directors and in charge of the Federal Securities Corporation.

Appellants, as directors of the Federal Securities Corporation, held monthly meetings and went over the affairs of the corporation minutely. The appellant Welch had the books of the corporation audited, and failing to find the company in as flourishing condition as he had been led to believe it was, resigned in August, 1924. Interest was paid to respondent on the Hool note from May 1 to December 1, 1924. Boyd was the agent of the corporation until it became bankrupt.

Appellants did not testify or offer any proof showing that they had no knowledge of how respondent's stock got into the possession of their company. Neither did they give any excuse why they could not have obtained such knowledge by the exercise of ordinary diligence.

■ We think that, in view of all the facts and circumstances in this case, the directors were presumed to know the relation existing between the corporation and the respondent, and if by the exercise of reasonable diligence and care on their part they could and would have known that they did not own respondent's stock, they are personally liable to him for the value thereof.

We think, also, that the evidence is sufficient to show that they had actual knowledge of the conditions under which the Federal Securities Corporation held respondent's stock.

Dodge testified on cross-examination that when he became

president and manager of Federal Securities Corporation there was turned over to him by Hool about $15,000 in cash and that of this amount $5,000 still remained in his hands at the time of the trial of this action, but refused to give any portion thereof to respondent.

Certainly directors of a corporation cannot take a man's property, sell it and convert the proceeds to their own use or to the use of the corporation and escape liability to the owner of the property, by simply saying to him you cannot prove that we knew that the property converted by us belonged to you and, therefore, we are not liable. Surely there is no principle of law or equity that would uphold such an unjust rule. We think the conclusion here reached is supported in principle by the following authorities: *Vajacich* v. *Southern Commercial Co.*, 21 Cal. App. 439 [132 Pac. 80]; *Mercer* v. *Duscomb*, 97 Cal. App. 757 [276 Pac. 387]; *Frontier Milling & E. Co.* v. *Roy White Co-op. M. Co.*, 25 Idaho, 478 [138 Pac. 825].

There is no merit in the contention that there is no evidence showing that the respondent's stock was worth $13,000. The Hool note was for $13,000. The stock cost respondent $13,000, and all the parties, especially Hool, Boyd and respondent treated the stock as being worth $13,000, and there is absolutely no testimony in the record to the contrary. This is surely a sufficient *prima facie* showing of the actual value of the stock to sustain the findings of the court.

Strenuous contentions are made that certain findings are not supported by the evidence. There is considerable merit as to these contentions in a number of instances, but under the view we have taken of the case, these findings are immaterial and can be disregarded.

We think the court's judgment was correct and should be affirmed, and it is so ordered.

Plummer, J., and Thompson (R. L.), J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on October 26, 1931, and a petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on November 23, 1931.