HELVERING, Commissioner of Internal Revenue, v. KENDRICK COAL & DOCK CO. *

No. 9858.

Circuit Court of Appeals, Eighth Circuit.

June 18, 1934.

Helen R. Carloss, Sp. Asst. to Atty. Gen. (Frank J. Wideman, Asst. Atty. Gen., and Sewall Key, Sp. Asst. to Atty. Gen., on the brief), for petitioner.

Stanley B. Houck, of Minneapolis, Minn. (W. Yale Smiley, of Minneapolis, Minn., on the brief), for respondent.

*Rehearing denied Oct. 15, 1934.

Before GARDNER, WOODROUGH, and VAN VALKENBURGH, Circuit Judges.

WOODROUGH, Circuit Judge.

This is a petition to review a decision of the United States Board of Tax Appeals, which found the respondent taxpayer not liable for an asserted income and profits tax for the year 1920.

The opinion of this court on the first review is reported in 29 F.(2d) 559. The first opinion of the Board of Tax Appeals appears in 6 B. T. A. 1092.

Respondent is a Minnesota corporation organized in July, 1916, with a capital stock of $50,000 divided into 500 shares of a par value of $100 each. Its entire capital stock was issued to Edward S. Kendrick, Jr., with the exception of qualifying shares to directors. Mr. Kendrick operated and managed the business of the corporation, the sale of coal at wholesale, at Minneapolis, Minn. Prior to June, 1920, Mr. Kendrick considered expansion, particularly through obtaining water transportation as necessary to the successful operation of the corporation, and began negotiations with that end in view. In May, 1920, at a special stockholders' meeting, the officers of respondent were authorized to enter into an agreement with certain other persons interested in the organization of a new corporation to be known as the Inland Coal & Dock Company, under the terms of which the respondent would transfer all of its furniture, fixtures, good will, contracts, and profits to be derived from existing contracts for the sale of coal with estimated profits of $40,000 in exchange for $50,000 worth of stock in the new company, the latter to assume all liabilities or losses which might arise in connection with the coal contracts. The agreement for the exchange of stock for assets was later changed so that respondent should sell its assets to the new company for $50,000 cash and respondent would buy for cash $50,000 of the capital stock of the new company, and, as so modified, it was carried out; a bill of sale was executed by respondent transferring to the other corporation its office furniture and fixtures, good will, and all profits to be derived from certain described contracts of respondent for the sale of coal. None of the accounts receivable or cash in the treasury was transferred; the surplus of the taxpayer at the date of the transfer was between $60,000 and $70,000 in cash and accounts receivable. As consideration for the transfer the Inland Coal & Dock Company delivered to respondent on June 12,

1920, a check for $50,000 and on the same date respondent issued its check for $50,000 in payment for 500 shares of common stock of the Inland Coal & Dock Company.

The Inland Coal & Dock Company was incorporated in Ohio with an authorized capital stock of 4,000 shares of preferred stock of $100 a share and 6,000 shares of common stock of no par value. All of the common stock was subscribed for at $100 a share. Respondent itself purchased 700 shares for $70,000 in addition to the 500 shares acquired as above indicated. Kendrick individually purchased 600 shares of the common stock for $60,000.

Certificates of common stock provided that their transfer was subject to the provisions of the "Code of Regulations" of the company, and that the shares were "accepted and held subject to all the provisions of the Code of Regulations and to the designations, preferences and voting powers, or restrictions or qualifications thereof, of the preferred stock, which are set forth on the reverse hereof." There is nothing in the record to disclose the nature of the "Code of Regulations."

None of the common stock has ever been sold by the original purchasers, and no dividend has been paid by the Inland Coal & Dock Company.

Immediately after its incorporation the Inland Coal & Dock Company acquired a dock at Duluth, Minn., which Kendrick testified was, at the time, essential to a large seller of coal, as was also an association with a steamboat company. The consideration formed through incorporation of the Inland Coal & Dock Company, he testified, rounded out the chain, "coal mines, steamship, dock and selling organization."

The Kendrick Coal & Dock Company had been operated successfully and had made money.

The respondent returned no income from this transaction for 1920. The Commissioner determined a deficiency based on a profit of $50,000 from the transaction, and respondent appealed to the Board of Tax Appeals. The Board sustained the Commissioner. On the prior appeal in this case the decision of the Board of Tax Appeals was reversed, because there was no finding of fact as to the cost to respondent of the property which it transferred, nor of the market value of the stock which it had received in the exchange. These matters were discussed in the opinion of the Board, but this court held that resort could

not be had to the opinion to "eke out the findings of fact." The conclusion of the opinion of the court is as follows:

"Our conclusion is that the order of the Board of Tax Appeals should be reversed as not sustained by the findings, and that the case should be remanded with instructions for such further proceedings as may be deemed advisable not inconsistent with the views herein expressed."

The mandate of the court contained substantially similar language.

The Board after the mandate went down to it, heard no new evidence. Upon a rehearing the parties agreed that the case might be resubmitted to the Board upon the reporter's minutes taken before the Board at the original hearing, together with the exhibits then offered and received on behalf of either party. The Board thereupon made additional findings of fact, in which it found that the 500 shares of stock transferred to respondent had no fair market value at the time of transfer. It also found, in substance, that the property transferred to the Inland Coal & Dock Company by respondent, aside from the office furniture and fixtures, had not cost respondent anything, and that the value of the furniture and fixtures had been adjusted through allowance for depreciation. The Board concluded that respondent had not received any income from the transaction, and that there was no tax liability. This petition for review has followed.

The Commissioner contends: (1) That the action of the Board in making new findings and a different decision on the original record of evidence was not in conformity with the mandate of this court. (2) That there was no sufficient evidence to sustain the finding of the Board that the stock received by respondent on the exchange was of no value.

■ 1. Obedience to the mandate of an appellate court is undoubtedly required. 26 USCA § 1226 (a, b); In re Sanford Fork & Tool Co., 160 U. S. 247, 16 S. Ct. 291, 40 L. Ed. 414; H. P. Coffee Co. v. Reid, Murdoch & Co. (C. C. A. 8) 60 F.(2d) 387; Great Northern Ry. Co. v. General Railway Signal Co. (C. C. A. 8) 57 F.(2d) 457; Guaranty Trust Co. v. M. & St. L. R. Co. (C. C. A. 8) 52 F.(2d) 418.

■ But no disobedience of the mandate is here reflected. The opinion and mandate clearly left to the Board of Tax Appeals to perform completely the duty which, the opinion held, had been imperfectly performed. This court expressly held that it was not its function, but that of the lower tribunal, to make the omitted findings. The record shows a waiver by both parties of the right to introduce further evidence on the issues, and so petitioner's contention that further evidence should have been taken is without merit.

■ 2. The parties on the prior appeal and on this appeal properly treat the transaction in June, 1920, as an exchange of property. Although the respondent purchased 500 shares of stock in the Inland Coal & Dock Company and the latter purchased the assets of respondent, the substance of the transaction, which alone is to be regarded, Commissioner v. Moore (C. C. A. 10) 48 F.(2d) 526, was an exchange of properties.

The relevant portion of the Revenue Act of 1918, c. 18, 40 Stat. 1057, 1060, § 202 (b) is:

"When property is exchanged for other property, the property received in exchange shall for the purpose of determining gain or loss be treated as the equivalent of cash to the amount of its fair market value, if any. * * * *"

Article 1566 of Treasury Regulations 45 under the Revenue Act of 1918 provides in part:

"Where property is transferred to a corporation in exchange for its stock, the exchange constitutes a closed transaction and the former owner of the property realizes a gain or loss if the stock has a market value, and such market value is greater or less than the cost of the property given in exchange."

Article 1564, as amended by T. D. 3206, 5 Cumulative Bulletin, 57, provides in part:

"The amount of income derived from an exchange of property, as of stock for a bond, is the excess of the fair market value at the time of exchange of the property received in exchange, over the original cost of the property exchanged for it."

Article 1563, as amended by T. D. 2971, Cumulative Bulletin, 38, provides in part as follows:

"Property received in exchange for other property has no 'fair market value' for the purpose of determining gain or loss resulting from such exchange when, owing to the condition of the market there can be no reasonable expectation that the owner of the property, though wishing to sell and any person willing to buy will agree upon a price at which to trade unless one or the other is under some peculiar compulsion. It does not follow that property has no 'fair market value' merely because there is no price therefor

established by public sales or sales in the way of ordinary business."

The question is whether the stock received by respondent had a market value at the time respondent received it.

■ It does not necessarily appear that the reference to the "Code of Regulations" influenced the Board in arriving at its decision. This reference to a selling compact of some nature does not prevent the stock from having a fair market value. Newman v. Commissioner (C. C. A. 10) 40 F.(2d) 225, and Id. (C. C. A.) 41 F.(2d) 743; Rodrigues v. Edwards (C. C. A. 2) 40 F.(2d) 408; Wright v. Commissioner (C. C. A.) 50 F.(2d) 727.

■■ To ascertain the fair market value of property, as the Treasury Regulations above quoted import, it is not necessary that the property actually shall have been sold in a market. Where personal property is sold in a definite and established market, or changes hands for money so regularly that a market price for it is created or maintained, it is obvious that it must have a fair market value. When the question arises as to its fair market value in litigation, the question merely is as to the price it commanded in the market at the particular time. Where, however, there is no such market, but the property has an intrinsic value, then the evidence must show what price that intrinsic value would command on a market where willing buyer and willing seller met. Wigmore, Evidence, § 717 (2d Ed.); Chamberlayne, Evidence, §§ 2099h, 2099i; North American Telegraph Co. v. N. P. Ry. Co. (C. C. A. 8) 254 F. 417, 418; Old Colony Co. v. Commissioner (C. C. A. 1) 59 F.(2d) 168, 170; Crowell v. Commissioner (C. C. A. 6) 62 F.(2d) 51, 54; Commissioner v. Swenson (C. C. A. 5) 56 F.(2d) 544; Chicago Ry. Equipment Co. v. Blair (C. C. A. 7) 20 F.(2d) 10, 13; McClory v. Dodge, 117 Cal. App. 148, 4 P.(2d) 223, 225.

In North American Telegraph Co. v. N. P. Ry. Co., supra, it is said: "The term 'market value,' as the words fairly import, indicates price established in a market where the article is dealt in by such a multitude of persons, and such a large number of transactions, as to standardize the price. Proof of such a market value can only be made by one of the recognized methods of proving the price current in a market. Individual dealings are not competent to prove it. The term is, however, frequently used in a figurative sense, as meaning the fair or reasonable value of the property—that is, such a value as the property would have if it were dealt in according

to the practices of a market overt. This is the meaning which the term usually has when applied to real property. To prove market value when it is used in this secondary or figurative sense, it is proper to receive evidence of individual transactions, even offers made in good faith for property of like character, the nature of the property, its location, its rental value, the uses to which it can be put, and all the manifold elements which are admissible to show the fair and reasonable value of property which is not so traded in as to give it a market value in the primary sense of the term. Private dealings in property can never be used to show market value in the primary sense, and, when used to show market value in the sense of fair and reasonable value, individual transactions can never be made the sole basis for ascertaining such value."

In Old Colony Co. v. Commissioner, supra, it is said: "It is not essential that there be a sale to determine the fair market value of the stock of a corporation. The nature of its business, and the other elements that go to make up the value of the stock to a purchaser who is willing and desirous of buying, may be considered. It is a question of the sound judgment of the Board of Tax Appeals."

In Crowell v. Commissioner, supra, it is said: "Intrinsic value may be resorted to for the purpose of establishing market value where from proven facts and circumstances there could be no doubt of the existence of a market if the same were offered for sale."

In McClory v. Dodge, supra, it is said: "There is no merit in the contention that there is no evidence showing that the respondent's stock was worth $13,000. The Hool note was for $13,000. The stock cost respondent $13,000, and all of the parties especially Hool, Boyd, and respondent, treated the stock as being worth $13,000, and there is absolutely no testimony in the record to the contrary."

In Chicago Ry. Equipment Co. v. Blair, supra, it is said: "Market value, speaking very generally, may be said to be the price which one, under no compulsion, is willing to take for property which he has for sale, and which another, under no compulsion, * * * is willing to pay for the article."

The most persuasive authority, because of the similarity of fact situation is Commissioner v. Swenson, supra. A corporation was organized for the purpose of drilling for oil. Nine men owned the stock. The corporation had financial difficulties, and an increase of

334

stock was decided on; 11,000 additional shares were to be issued. Swenson, an original shareholder, transferred an oil lease to the corporation for 2,400 shares of stock. The balance of the stock sold for par. The question was whether the 2,400 shares had a market value. It was held they did despite the speculative character of the venture, the somewhat troubled financial history of the corporation preceding, and that the sale of the balance of the new issue of stock was not made on the general market, but was sold to acquaintances of one or more of the old stockholders. A finding of the Board to the contrary was held to be contrary to the evidence.

In this case, the Kendrick Coal & Dock Company had had a successful history. It transferred contracts to the new corporation with an estimated profit in them of $40,000; it transferred its good will. Expansion of the business through acquisition of dock and transportation facilities was reasonably to be expected. All of the stock was subscribed for at $100 per share by experienced business men, and respondent purchased 700 shares at that price in addition to the 500 shares transferred to it in the exchange. There is the contemporary record exhibiting a confidence in the future prosperity and success of the company and of the value in the stock which should not be disregarded. Sioux City Stock Yards Co. v. Commissioner (C. C. A. 8) 59 F.(2d) 994; Planters' Operating Co. v. Commissioner (C. C. A. 8) 55 F.(2d) 583.

The Board's determination that the 500 shares of stock of the Inland Coal & Dock Company which the taxpayer received in exchange for its assets in 1920 had no fair market value in 1920 is a determination of an issue of fact, and, if supported by any substantial evidence, cannot be reversed by this court. Phillips v. Commissioner, 283 U. S. 589, 51 S. Ct. 608, 75 L. Ed. 1289; Powers Mfg. Co. v. Commissioner, 34 F.(2d) 255 (C. C. A. 8); Franciscus Realty Co. v. Commissioner (C. C. A. 8) 39 F.(2d) 583; Gloyd v. Commissioner (C. C. A. 8) 63 F.(2d) 649, certiorari denied October 9, 1933, 54 S. Ct. 52, 78 L. Ed. 69.

But we are persuaded that the Board's finding that the shares of the capital stock of the Inland Coal & Dock Company had no fair market value at the date of the receipt is. unsupported by any substantial evidence, and the evidence conclusively establishes to the contrary, and the determination of the Board on that issue of fact should be reversed. Gloyd v. Commissioner (C. C. A.) 63 F.(2d)

649; Russell v. Commissioner (C. C. A.) 45 F.(2d) 100; Toledo Grain & Milling Co. v. Commissioner (C. C. A.) 62 F.(2d) 171.

The decision of the Board of Tax Appeals should be and is reversed.