[Civ. No. 8738. Second Appellate District, Division One.—February 18, 1935.]

H. A. THOMSEN, as Receiver, etc., Respondent, v. CULVER CITY MOTOR CO., INC. (a Corporation), et al., Appellants.

[Civ. No. 8739. Second Appellate District, Division One.—February 18, 1935.]

H. A. THOMSEN, as Receiver, etc., Respondent, v. JAMES E. KERRIGAN et al., Appellants.

[Civ. No. 8737. Second Appellate District, Division One.—February 18, 1935.]

CHARLES KERRIGAN, Appellant, v. H. A. THOMSEN, as Receiver, etc., Respondent.

D. Chase Rich for Appellants.

Andrew J. Copp, Jr., for Respondents.

SHINN, J., *pro tem.*—Appeals are presented in each of three cases which were consolidated and tried upon the same evidence, separate judgments having been rendered. ·They arose out of a series of transactions briefly outlined as follows:

Culver City Motor Company, Inc., was a corporation, the stock of which, except for three qualifying shares, was owned by J. E. Kerrigan; Charles H. Kerrigan was vice-president, G. A. Lang, secretary and L. Walker was the remaining director and assistant secretary. The company was dealing in automobiles. In August, 1929, it made a transfer of all its assets to J. E. Kerrigan in consideration of his assuming its liabilities; Kerrigan continued to carry on the business

under the fictitious name of Culver City Motor Company. The corporation continued in existence with the same officers and directors. It was indebted to First National Bank of Culver City and on November 1, 1929, gave a sixty-day renewal note to the bank for $5,000 signed by J. E. Kerrigan, as president. It also gave the bank eight bills of sale, each covering one new automobile, as security for the debt, retaining possession of the cars, which it afterwards sold in the usual course of business. The money received from these sales was deposited in the bank to the account of Culver City Motor Company (not the corporation) and was used in the business, no part being paid to the bank. After the sale of the cars the bank demanded possession of the cars or payment therefor, receiving neither. The bank assigned to Westman the note and also its claims to the cars or their value, for the purpose of collection. Suit was brought by the assignee on the note and the assets of the business were attached. Judgment was confessed in this action for $5,330, and execution was issued thereon. A purchaser was found for the business who paid $8,118.64 at the execution sale. An agreement was entered into between the bank, J. E. Kerrigan, doing business as Culver City Motor Company, and the purchaser, under which the proceeds of the sale were turned over to the bank as trustee for creditors of the business whose claims amounted to some $26,000, to be distributed ratably between them. By this agreement J. E. Kerrigan also promised to give the bank his note for the amount of the judgment that remained unpaid after applying thereon the bank's share of the distribution, this balance amounting to $3,899. C. H. Kerrigan was a creditor of the business in the amount of $9,000. His share of the creditors' fund amounted to $2,430. The bank refused to pay C. H. Kerrigan, who sued on his claim as a creditor; the bank filed a counterclaim in damages, and Westman brought suit against the corporation, both Kerrigans, and Lang, in which, as in the counterclaim, recovery was sought in the sum of $6,000 for conversion of the cars. No cars were recovered from any of the purchasers, nor was any court action taken for that purpose. J. E. Kerrigan refused to execute his note for the balance of the judgment and Westman sued on the agreement, to recover the amount for which the note was to be given.

Upon a trial of the issues the court decided that the automobiles had been converted and rendered judgment against the corporation, J. E. Kerrigan, C. H. Kerrigan and Lang in the amount of $4,000 damages; the counterclaim of the bank was upheld and the damages for conversion found to have been sustained by the bank were offset against the claim of C. H. Kerrigan against the bank, and Westman was given judgment in the remaining action against J. E. Kerrigan for the amount unpaid on the original judgment, for which he had agreed to give his note. Charles H. Kerrigan appeals from the judgment denying him recovery on his creditor's claim; J. E. Kerrigan appeals from the judgment rendered against him under the agreement, and all of the defendants appeal from the judgment in the action for conversion.

Some twenty of the findings are challenged by appellants as being unsupported by the evidence. The criticisms found in the briefs of appellants are of such a general nature and the references to the transcript so meager that we are unable to tell in most instances what points are urged or where the evidence relating to the findings may be found. We shall therefore discuss only the findings concerning which argument is presented in accordance with the rules, these points being sufficient for the proper disposition of the appeals.

The judgment offsetting the bank's claim for damages against the creditor's claim of C. H. Kerrigan, and the judgment against the corporation and the directors, are based upon findings that the bank's security was converted. The appellants in these cases maintain that the evidence is insufficient to sustain these findings, and we have reached the conclusion that this contention must be upheld. The evidence shows that for a number of years the corporation had been doing business with the bank, borrowing money and giving bills of sale of automobiles as security. The corporation always retained possession of the cars and sold them as customers were found. From time to time the bank would make a check of the cars on hand and would either receive additional security or payment on account of the indebtedness when, through sales, the security had become inadequate. The practice never existed of procuring releases from the bank before the cars were sold, nor did the

bank ever require that the money received from sales be accounted for as received. When the renewal note was given November 1, 1929, an officer of the bank exacted an agreement from J. E. Kerrigan that each sale should be reported and a new bill of sale be given in substitution for the one covering the car sold or that the note should be reduced; no specific sum was agreed upon that should be paid for the sale of a single car. While, as stated, the bills of sale and the note were executed on behalf of the corporation by J. E. Kerrigan as president, he at the same time was carrying on the business as an individual and it does not appear that the corporation sold any of the cars or received any of the money. The evidence is silent as to any specific uses that were made of the money, but insufficient to warrant an assumption that the corporation received it.

C. H. Kerrigan is the son of J. E. Kerrigan and made his home with the latter. He had been a director for a number of years and vice-president for less than a year. His work was in the parts and service departments and he was not a salesman. Lang is shown to have been a director and secretary. There was evidence that C. H. Kerrigan knew the bank held the bills of sale and that it was a creditor of the corporation; there was no such evidence as to Lang, although he acted as a director in authorizing the officers to borrow money from the bank. Neither he nor C. H. Kerrigan is shown to have had anything to do with the books or accounts of the corporation or to have had any dealings with the bank, nor is there evidence that either of them had knowledge of the agreement of J. E. Kerrigan with the bank regarding the substitution of bills of sale, which, as noted, was a departure from the previous method of doing business. The directors apparently did not hold any meetings after the transfer of the assets to J. E. Kerrigan. C. H. Kerrigan testified that he believed the corporation had ceased to do business; Lang was not called as a witness. J. E. Kerrigan sold the eight cars, C. H. Kerrigan having negotiated the sale of three of them.

While it is true, of course, that directors and officers of a corporation are liable equally with the corporation for its torts in which they participate, it is equally true that if they do not participate therein, and if they are guilty of no culpable negligence in allowing the commission of the wrong-

ful acts, they are not liable. ■ We think the evidence falls far short of showing a liability on the part of directors C. H. Kerrigan and Lang, even if it should be assumed that the corporation made the sales and received the proceeds thereof.

The case does not fall within the rules stated in *Vujacich* v. *Southern Commercial Co.,* 21 Cal. App. 439 [132 Pac. 80], or *McClory* v. *Dodge,* 117 Cal. App. 148 [4 Pac. (2d) 223], cited by respondent. In the first of these cases it was held that directors would be presumed to know of transactions openly and continuously carried on by the corporation in which it made a practice of receiving deposits from laborers for safekeeping and using the money for its own purposes. In *McClory* v. *Dodge, supra,* directors were held liable where they sold plaintiff's stock, which he had turned over to them to be exchanged for stock of their corporation, and used the money for the corporation. Although it was said that they would be presumed to know the conditions under which the corporation became possessed of plaintiff's property, a statement fully justified by the facts of the case, it was also pointed out that the directors had actual knowledge of those facts and that plaintiff had not parted with title to his stock.

It appears that directors C. H. Kerrigan and Lang did not have knowledge of and did not participate in any wrongful act, nor was either of them at fault in the performance of his duties as director or officer. ■ No wrong was committed in the mere sale of the cars. If J. E. Kerrigan did not keep his agreement with the bank, the other defendants were not to blame because they had no part in it. We do not believe, furthermore, that there was a conversion of the bank's property at all. The bank gave authority to sell the cars—in fact, expected them to be sold. Where one is authorized to sell personal property for another, a conversion of the property does not result from a failure to pay over the proceeds. (65 Cor. Jur. 34.) ■ The corporation, moreover, did not sell the cars; they were sold by J. E. Kerrigan, doing business as Culver City Motor Company. There was no breach of duty toward the bank in making the sales, although there was a violation of the agreement of J. E. Kerrigan to replenish the security or reduce the note when the sales were made. By the terms

of the collateral security note the bank had a right to take possession of the cars and sell and deliver them in case of default in meeting the note, which default occurred on January 2, 1930, but the bank made no demand for possession until after the cars had been sold. If the cars had then been in the possession of the defendants and had they persistently refused to surrender them, a conversion would have occurred, but it did not result from the refusal to meet the demand that was made. A refusal to comply with a demand for possession of personal property does not amount to a conversion thereof where at the time of the demand it is impossible to comply therewith. (*Steele* v. *Marsicano*, 102 Cal. 666 [36 Pac. 920].) We are not unmindful of the fact that as each car was sold the sale should have been reported and that J. E. Kerrigan's agreement with the bank required that the latter be protected, but the bank did not approve that substitution of bills of sale of different cars or payment on account of the note were terms to be complied with as a condition to the right to makes sales, nor was the authority to make sales terminated by the mere maturity of the note in the absence of a demand for possession. Mr. Ahern, an employee of the bank, made a check of the cars on hand in the latter part of January, 1930; at that time two of the eight cars had been disposed of. The bank, even with knowledge of this fact, and knowing that no payment had been made on the note, made no effort to take possession of the cars and did not revoke J. E. Kerrigan's authority to sell the remaining cars. ▮ It follows that J. E. Kerrigan had a right to possession of the cars at the time they were sold, by reason of the acquiescence of the bank therein and its failure to demand possession and as, admittedly, the bank was not the owner but held only a lien, it therefore could sue in conversion only in case the sales deprived it of a then existing right to immediate possession. A lien will not support trover unless at the time of the conversion the lienholder had possession or the right to immediate possession of the property. (65 Cor. Jur. 63.) No conversion was established as against the defendant corporation or its directors. If directors C. H. Kerrigan and Lang were not liable for the alleged conversion, there would seem to be no object in seeking a judgment against the corporation and J. E. Kerrigan. The assignee of the bank, as will

hereinafter appear, has a judgment against J. E. Kerrigan for the full balance of the latter's debt to the bank. The record furnishes no good reason for believing that the bank would suffer any prejudice in failing to obtain another judgment against the corporation and J. E. Kerrigan for the amount of the same debt under the name of damages.

■ Plaintiff C. H. Kerrigan, in his action against the bank, made a motion to dismiss the counterclaim of the bank upon the ground that the facts stated therein did not constitute a demand that could be asserted as a counterclaim. This motion was properly denied. By an amendment to section 438 of the Code of Civil Procedure in 1927, the scope of permissible counterclaims has been largely extended. It is no longer necessary that the counterclaim be one arising out of the same transaction as the one alleged by plaintiff or that it relate to the subject of the action or that it be based on contract. All that is required is that it be one which tends to diminish or defeat plaintiff's recovery and that the claim exists between parties as to whom a several judgment might be had in the action.

In *Terry Trading Corp.* v. *Barsky*, 210 Cal. 428 [292 Pac. 474], it was said: "All of the other limitations were abolished by this amendment, and an intent on the part of the legislature to avoid multiplicity of suits and to have all conflicting claims between the parties settled in a single action was most clearly manifested."

The counterclaim fully meets the requirements of the section as amended, since the effect would be, if defendant prevailed thereunder, to defeat plaintiff's claim in full and to award defendant a money judgment against plaintiff.

■ Appellants also claim that the bank waived all claims based upon the security when its assignee Westman recovered judgment on the note and satisfied the judgment. No plea of waiver is found in the pleadings and we think none was shown. At the time the action was brought on the note, the security had been lost to the bank. It claimed the right to recover the value of the security from persons other than the maker and guarantor of the note. The satisfaction of judgment did not satisfy the bank's claims. The bank did not receive payment but only custody of the funds to be disbursed to creditors. Waiver is an affirmative defense

that must be pleaded. (*Wienke* v. *Smith*, 179 Cal. 220 [176 Pac. 42].) In *Cross* v. *Superior Court*, 83 Cal. App. 144 [256 Pac. 453], the rule is stated thus: "Waiver can result only from an intentional relinquishment of a known right, and it may be inferred only where the conduct of the party has resulted in a prejudice to the rights of his opponent caused by an honest belief that the waiver was intended." There is no merit in this contention.

In appeal No. 8739, plaintiff Westman recovered judgment against James E. Kerrigan for $3,822.59, the unpaid balance of the judgment in favor of Westman rendered in the suit on the note. The sole point urged for reversal of this judgment is that defendant was excused from compliance with his agreement because of the failure on the part of the bank to perform its obligations under the agreement sued on. This agreement provided that the proceeds of the execution sale would be paid over to the bank. The judgment amounted to $5,330 and the amount received by the bank after deducting costs was $7,330.37. This sum the bank agreed to prorate among the creditors whose claims should be filed in the escrow. It received as its share of this distribution the sum of $1431, leaving an unpaid balance of $3,899. The agreement provided as follows: "The party of the first part agrees that upon receipt of said sums of money it will immediately make distribution thereof to all of the creditors of the party of the second part who have filed claims to date against the party of the second part in a certain escrow now pending in the California Bank, National City Branch, Escrow No. 4101, *pro rata*, each creditor to receive a proportionate share of his claim as the total sums of money to be received shall bear to the full aggregate total of the claims now on file with said bank.

"It is agreed that prior to said distribution the party of the first part shall be entitled to pay to itself all reasonable costs expended up to the present time in the prosecution of the said action and to be expended by reason of said sale in said Superior Court action numbered 295567.

"The party of the second part further agrees to execute and deliver to the party of the first part, or order, his promissory note, payable on demand, in the usual form, waiving demand, notice, protest, diligence, etc., for the full difference between what the party of the first part shall be entitled to

receive under the proportionate distribution of said funds and the amount of $5,330.00.

"In the event any creditor of the party of the second part shall not receive his *pro-rata* dividend and payment from the party of the first part, due to its neglect and/or fault, within ten days after the party of the first part shall have received said moneys, and after said date shall file suit against the party of the first part for the recovery of said sums due, the party of the first part agrees to pay a reasonable attorneys' fee in any action commenced and succeeded in by said creditor."

Defendant based his refusal to execute the note as agreed upon the failure to pay the claim of Charles H. Kerrigan in the amount of $2,430 and the alleged wrongful deduction of some smaller sums. He now urges that he should have been excused from giving his note until the bank had fully complied with its agreement to disburse the funds. Upon the other hand, it is claimed by respondent that the promise to give the note was not a covenant dependent upon performance by the bank. A fair reading of the agreement leads us to the conclusion that the note was to be given as soon as it was ascertained what amount would be payable to the bank from the fund. This amount was ascertained and paid and demand was made on defendant for the note, following which the assignee of the bank sued and recovered judgment under the agreement.

Appellant cites cases in which the covenants are mutual and dependent or where performance by one of the contracting parties is made a condition precedent to performance by the other. The covenants involved here are not dependent. There is no stipulation in the agreement that the note was to be given after the creditors had been paid; the debt to be evidenced by the note already existed. The only apparent reason for delaying its making was the necessity for arriving at the proper amount, which could not be known until the creditors had filed their claims. This contract, like any other, should receive a construction consistent with its terms and with the intention of the parties. So construed, it does not excuse the giving of the note until the bank had completed its distribution of the funds. The authorities amply support such a construction as would treat the respective covenants to be independent of each other. (*Deacon* v. *Blodget,* 111 Cal. 416 [44 Pac. 159]; *Pacific Mill Co.* v. *In-*

*man, Poulsen & Co.,* 46 Or. 352, 353 [80 Pac. 424]; *Union Pac. R. Co.* v. *Travelers' Ins. Co.,* 83 Fed. 676; *Front Street, etc. R. Co.* v. *Butler,* 50 Cal. 574.)

It follows that the judgment in this case should be affirmed.

It will be observed that in appeal No. 8737, the action of Charles H. Kerrigan against the bank, the findings establish the fact that plaintiff therein was a creditor of the business to the extent of $9,000 and that under the judgment he was awarded nothing because of the offset allowed the bank on its counterclaim. In appeal No. 8738, the conversion action, plaintiff Westman recovered judgment for $4,000 against Charles H. Kerrigan as well as against the other defendants. Had the plaintiff in that action been entitled to recover at all, the judgment against C. H. Kerrigan should have been limited to the excess of the value of the property above the amount admittedly due him as a creditor. Other inconsistencies, as well, such as the assertion of its claim for damages in one action by way of counterclaim by the bank, while the same claim is prosecuted in another action by its assignee, show the wisdom of the rule that in consolidated cases, such as these, one set of findings and one judgment only should be rendered.

The judgment in appeal No. 8739 is affirmed; the judgments in appeals Nos. 8737 and 8738 are reversed.

Houser, Acting P. J., and York, J., concurred.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 18, 1935.