## KITRELL v. UNITED STATES. *
### No. 1253.

Circuit Court of Appeals, Tenth Circuit.
Aug. 20, 1935.
Rehearing Denied Sept. 19, 1935.

Harry S. Silverstein, of Denver, Colo. (G. Dexter Blount and David Rosner, both of Denver, Colo., on the brief), for appellant.

Ivor O. Wingren, Asst. U. S. Atty., of Denver, Colo. (Thos. J. Morrissey, U. S. Atty., of Denver, Colo., on the brief), for the United States.

Before PHILLIPS, McDERMOTT, and BRATTON, Circuit Judges.

PHILLIPS, Circuit Judge.

Kitrell was tried, convicted, and sentenced on an indictment containing three counts charging violations of section 146, Revenue Act of 1928, 45 Stat. 835 (26 USCA § 2146).

Count 1 charges that Kitrell attempted to evade a tax of $72,214.12 on his income for the year 1930.

Count 2 charges that Kitrell attempted to evade a tax of $8,290.37 on his income for the year 1931.

Count 3 charges that Kitrell had a gross income of over $5,000 for the year 1931 and failed to file a return for that year.

*Writ of certiorari denied 56 S. Ct. 248, 80 L. Ed. —.

On an application for bail we held the several counts of the indictment were sufficient in law and not duplicitous. We adhere to that conclusion. See Kitrell v. United States (C. C. A. 10) 76 F.(2d) 333.

The United States filed a bill of particulars which stated that Kitrell, during the calendar year 1930, sold 5,160 shares of his stock in the Paramount Life Company at an average price of $24.387 per share, for which he received in that year $125,836.92, and that during the calendar year 1931 he sold 4,042 shares of his stock in such company at an average price of $4.836 per share, for which he received in the latter year $19,547.11. It sets out the names of the persons to whom such stock was sold and the amounts received from each.

Kitrell interposed a motion for a directed verdict on the ground the evidence failed to establish the offenses charged. This motion is predicated chiefly upon the contention that the United States failed to prove a taxable income was received in 1930 or 1931, and a gross income of $5,000 or more in 1931. This requires an analysis of the several items of income concerning which proof was introduced.

49,000 shares of stock in the Paramount Life Company was issued to Kitrell, Wyers and Johnson in exchange for insurance forms which belonged to Wyers. Kitrell paid no consideration for this stock. Therefore amounts received by him from the sale of his part thereof were gross income to him.

### 1930 Transactions.

In each of the following transactions in 1930 the shares sold were Paramount Life Company stock, and were transferred from Kitrell's personal certificate to the purchaser:

E. W. Waters made the following purchases of stock in Kitrell's presence: On October 30, 5 shares from Aaby, Stewart & Kitrell, for which he gave a check for $112.50 payable to cash. On November 6, 32 shares for which he gave a check for $512 payable to cash. On October 29, 10 shares for which he gave a check for $225 payable to cash. On October 9, 5 shares for which he paid $112.50, and received a receipt signed "P. W. Stewart for the Manager of Production." Kitrell was the Manager of Production. On September 8, 20 shares for which he gave a check payable to cash for $500. This check was endorsed "M. H. Aaby & M. T. Snodgrass." The Paramount Company's books show that Kitrell, at about the time the above transactions took place, received credits thereon of $1,500, $695.39, and $500.

Anna Sawdo purchased 75 shares of stock from Tony Sposato and paid $300 in cash therefor. Kitrell was present at the time.

Sylvia Peck purchased 11 shares of stock for which she paid Carlock, an agent of Paramount Company, $165.

E. A. Nagel purchased 278 shares of stock for which he gave a check for $1,760 payable to cash. This check was endorsed by Paramount Company, but Kitrell received credit therefor on the company's books. Nagel purchased 100 shares from Hegarty and gave the latter his check for $502.50. He also purchased 100 shares from Carlock and gave the latter a check for $500.

It is contended that the proof did not establish Kitrell received the purchase price of the above sales. The circumstances warrant the inference that he did. The stock sold belonged to him and it is unlikely he would have permitted its transfer without having received the purchase price paid therefor. This, with other facts proved, warranted the jury in finding Kitrell received the proceeds of such sales. What we have here said applies also to the Mary Clyncke and J. B. Jones sales, referred to later.

John Sawdo purchased 42 shares, for which he paid $25.00 per share. With Kitrell's consent he gave Sposato $530 in cash, a Union Trust Company bond for $660, and 12 shares of Cities Service stock.

J. B. Jones purchased 54 shares from Kitrell and Carlock "on the basis of $25 per share," or $1,350, and paid for same with 54 shares of Cities Service stock.

It is contended that the property received in exchange for such stock may not be considered as income to Kitrell, because there was no proof of the value of such property.[1]

---

[1] 26 USCA § 2111, provides in part as follows:

"(a) Computation of Gain or Loss. Except as hereinafter provided in this section, the gain from the sale or other disposition of property shall be the excess of the amount realized therefrom over the basis provided in section 2113. * * *

"(c) Amount Realized. The amount realized from the sale or other disposition

But the parties themselves placed a value on the stock sold of $25 per share. There is no evidence to the contrary. The action of the parties was sufficient proof of value.

In Chicago Railway Equipment Co. v. Blair (C. C. A. 7) 20 F.(2d) 10, 13, the court said:

"Market value, speaking very generally, may be said to be the price which one, under no compulsion, is willing to take for property which he has for sale, and which another, under no compulsion * * * is willing to pay for the article."

See, also, Helvering v. Kendrick Coal & Dock Co. (C. C. A. 8) 72 F.(2d) 330; Crowell v. Commissioner (C. C. A. 6) 62 F.(2d) 51.

In McClory v. Dodge, 117 Cal. App. 148, 4 P.(2d) 223, 225, the court said:

"There is no merit in the contention that there is no evidence showing that the respondent's stock was worth $13,000. The Hool note was for $13,000. The stock cost respondent $13,000, and all of the parties especially Hool, Boyd, and respondent, treated the stock as being worth $13,000, and there is absolutely no testimony in the record to the contrary."

On November 17 Mary Clyncke bought 16 shares and paid one Coe $400 in cash. On November 18 she bought 50 shares from Stewart and gave him a $1,000 Cities Service bond. About the same time she purchased 50 additional shares from Stewart and gave him a $500 Lashley-Persons note and a "Lowell farm loan for $500" in payment therefor. No evidence was introduced with respect to the market value of these securities. The parties placed no value upon such securities in their dealings and therefore no profit was proved in such exchange. The only income to Kitrell resulting from the above transactions, therefore, was the $400 paid for the 16 shares of Kitrell's stock.

Gus Schmidt purchased 70 shares from Kitrell. Under Kitrell's instructions Schmidt made out two checks in payment therefor, one for $371.60 made payable to cash and later endorsed by Kitrell, and another for $1,500 made payable to South Denver Finance Company that he gave to Kitrell.

On July 12 A. Werner purchased 100 shares for which he gave a check for $350 payable to the Paramount Company, and a note for $400 payable to himself and endorsed "Albert Werner." The check was endorsed by the Paramount Company and deposited to its account. The company's books show that Kitrell's personal account was credited with the $350 check on August 26. The note was later taken up by a check for $400 to Davis, and he endorsed it to Kitrell. The note was marked "Pd. Aug. 25–30 J.D.K."

R. D. Farthing bought 100 shares from one Jackson at $25 per share, and gave Jackson a deed to a piece of property in Trinidad. The deed was made out to Kitrell. He sold the property to one Barrack in 1930 for $1,200. It is contended that there is no evidence of fair market value of the property exchanged for the stock. That is immaterial. If the fair market value was $2,500 and that amount was income to Kitrell, the sale in 1930 for $1,200, which constitutes a closed transaction, resulted in a loss of $1,300. If there was no market value, the sale of the property for $1,200 resulted in that much income in 1930. Thiele, Kitrell's father-in-law who sold the property, received $600 of the proceeds of the sale as payment of back salary. He was working for Paramount Company and the salary due him was its obligation and not Kitrell's. Kitrell realized at least $1,200 from this transaction.

Brown paid Kitrell $150 for rent during 1930, which was income to him.

It is unnecessary to consider the other items concerning which proof was introduced.

### Recapitulation of 1930 Income.

| | |
|---|---|
| Waters | $1,462.50 |
| Anna Sawdo | 300.00 |
| John Sawdo | 960.00 |
| Sylvia Peck | 165.00 |
| Nagel | 2,762.50 |
| Farthing | 1,200.00 |
| Mary Clyncke | 400.00 |
| Jones | 1,350.00 |
| Schmidt | 1,871.60 |
| Werner | 750.00 |
| Brown (rent) | 150.00 |
| Total income, 1930 | $11,371.60. |

of property shall be the sum of any money received plus the fair market value of the property (other than money) received."

■ The evidence established deductible items aggregating $4,269.35, leaving a net income in 1930 of at least $7,102.25.

Kitrell had a wife and one child in 1930, and was therefore entitled to a personal exemption of $3,900. This amount, deducted from net income, leaves $3,202.25 subject to a tax for 1930.

### 1931 Transactions.

C. F. Rumbaugh purchased 1,000 shares of Kitrell's stock for which he paid Kitrell $1,000, and $81 as a transfer charge. Kitrell gave him a receipt. He also purchased from Kitrell 1,260 shares for $1,452.20, 300 shares for $300, 100 shares for $100, and 100 shares for $100, and paid Kitrell for same, making a total of $1,952.20.

■ Kitrell and his brother Paul went to see Mary Clyncke and sold her 100 shares of Kitrell's stock. Under Kitrell's direction she executed a note for $1,475 payable to Paul in payment thereof. This stock was transferred from Kitrell's personal certificate. The proceeds from this sale constituted income to Kitrell. Although the note for $1,475 was made payable to Paul, the stock sold belonged to Kitrell. This might have constituted a gift to Paul. If so, the gift made was not the stock but the proceeds from the sale. It also might have represented a payment to Paul of an obligation, but in that case it would clearly constitute income. The transaction is not explained, and we are of the opinion that the entire amount was income to Kitrell. Notes given in payment for property are ordinarily treated as cash in determining the gain or loss in the sale or exchange of property. See Pinellas Ice & Cold Storage Co. v. Commissioner, 287 U. S. 462, 468, 469, 53 S. Ct. 257, 77 L. Ed. 428.

Subsequently, but before the end of 1931, Paul discounted the note with one Hayutin and received $1,225. If the note actually belonged to Paul at that time, the $250 loss would not accrue to Kitrell. If the note actually belonged to Kitrell, he would be entitled to that loss as a deduction. The bill of particulars shows only $483.60 received from this transaction and the trial court limited the evidence to that amount.

Huizingh, after negotiations with Berkowitz and McNamara, purchased stock from Kitrell and gave three checks for $500, $1,000, and $2,250 respectively, all payable to Kitrell. These checks were endorsed by Kitrell and were marked paid. Kitrell gave Huizingh a receipt for the $500 check which stated that Kitrell was to act as trustee and was to guarantee delivery of the stock. Huizingh testified that when this stock was transferred to him it was not in Kitrell's name. Other testimony was to the effect that the stock could not be traced to Kitrell's certificate. The evidence failed to establish that the proceeds of such sales constituted income to Kitrell in 1931.

### Recapitulation of 1931 Income.

| | |
|---|---|
| Rumbaugh | $2,952.20 |
| Clyncke | 483.60 |
| Total Income, 1931 | $3,435.80 |

■ The evidence established deductions aggregating $833.84. This left a net income of $2,601.96 from which the personal exemption of $3,900 must be taken, leaving no taxable income established for 1931.

The evidence also failed to show sufficient gross income to require the filing of a return for 1931.

■ The United States over objection introduced evidence of bank deposits made by Kitrell in 1930 and 1931 aggregating $72,761.99. It is urged that these were in no wise connected up with the sales of stock, and that it was error to admit proof thereof. The court instructed the jury that it should not consider this evidence unless it found from other evidence, beyond a reasonable doubt, that the bank deposits were of funds received by Kitrell from the sales of stock to the purchasers who appeared as witnesses in the case. In view of this instruction the error, if any, was non-prejudicial.

The United States over objection introduced evidence that in 1930 Kitrell purchased Oriental rugs for which he paid $1,000 and two Stutz automobiles on the installment plan, and paid thereon substantial amounts in that year. This tended to corroborate the direct evidence that he received a substantial taxable income in that year.

■ At the close of his charge to the jury, the Court asked counsel if they had any exceptions. Counsel for Kitrell excepted to the charge respecting the bank deposits and the failure of the Court to define what constituted deductible items. Thereupon the Court gave an additional charge upon those matters. Counsel tendered no further in-

struction and took no further exception. Instead, counsel acquiesced in the charge as finally given.

Under the circumstances, Kitrell may not here urge that the charge as finally given was erroneous. Wood v. W. E. Sexton Co. (C. C. A. 3) 275 F. 660, 662; Cucciarre v. New York C. & H. R. R. Co. (C. C. A. 7) 163 F. 38, 41; Barnes & Tucker Coal Co. v. Vozar (C. C. A. 3) 227 F. 25, 28; Pennsylvania R. R. Co. v. Minds, 250 U. S. 368, 373, 374, 39 S. Ct. 531, 63 L. Ed. 1039.

The judgment on count 1 is affirmed. The judgments on counts 2 and 3 are reversed with instructions to grant Kitrell a new trial on those counts.