522

[Civ. No. 10149.   Second Appellate District, Division One.—April 28, 1936.]

ANNA McKINNIE, Respondent, v. GUARDIAN HOLDING CORPORATION et al., Defendants; CHARLES H. HAMBURG, Appellant.

E. Neal Ames for Appellant.

Scott McReynolds for Respondent.

DESMOND, J., *pro tem.*—Appeal in his own behalf by defendant Hamburg, from a judgment rendered against Guardian Holding Corporation, Master Holding Corporation, and three individuals, Johnston, Pratt and Hamburg, this appellant.   He contends that the judgment is not supported by the evidence.   The Guardian Holding Corporation, organized under the laws of California and dealing largely with building and loan securities, had been doing business very success-

fully for some years prior to 1929, the value of its shares increasing steadily. Johnston and Hamburg served upon its board of directors, the former as president; Pratt acted as fiscal agent. Early in 1929, as appears from minutes of a special meeting of the board of directors held on March 4th, this California corporation took under consideration a plan to organize under the laws of Delaware a new company to do business on a large scale and to be known as "Master Guardian Holding Corporation", also occasionally called the "Master Holding Corporation". It was intended, with the consent of the "Guardian" stockholders, "to convey to the new corporation all the assets and liabilities of the Guardian Holding Corporation and receive therefor shares in the Master Holding Corporation so that each shareholder in the Master Holding Corporation shall receive one share at $25.00 par for each share of $10.00 par now held by him or her". During the year 1929 various letters touching upon the proposed merger were mailed to "Guardian" shareholders by that corporation. The letter of December 29, 1929, recited reasons why some of the shareholders refused to send in their stock, thereby blocking the merger, and closed with the following words:

"In regard to the future your Board of Directors now recommends that on account of general conditions we adopt a policy that is ultra-conservative. They cannot foretell the results of conditions caused by stock market deflation and they believe we should now await developments. *They feel we should make no change in our policy and also undertake no expansion until conditions have returned to normal.*

"*Also they feel we should make no change in our corporate structure until such normal conditions have returned.* They believe you will fully agree with them that this is the wise thing to do and they will bring this recommendation before you at our stockholders' annual meeting in January." (Italics ours.) So far as the evidence discloses this was the last letter sent the stockholders of Guardian Holding Corporation by the corporation or any of its officers with the exception of the letter of February 14, 1930, reporting upon the annual shareholders' meeting held on January 29, 1930. In that letter we find the following recommendation by the board of directors:

"That on account of the present general financial conditions and the changes which have been made in the laws of

California (effective August 14th, 1929) that we defer further action for sixty days, or until said general financial conditions again become normal. This recommendation was accepted by the stockholders and was adopted by unanimous vote.

"You may, therefore, expect to receive, in due time, a further recommendation from your Board of Directors and in such manner that we may obtain your opinion and approval at that time."

It will be noted that these two letters were written after the financial depression broke upon this country in the fall of 1929, and we know definitely that Guardian Holding Corporation never did effect a merger of that company into the Master Holding Corporation or Master Guardian Holding Corporation, the normality of general financial conditions, mentioned in the final company letter of February 14, 1920, as a condition of further action, never returning. About this time, however, the defendant Pratt, a shareholder in Guardian Holding Corporation, got busy on another plan not calling for a merger, and, on March 10, 1930, filed in Delaware a certificate organizing Master Holding Corporation, the cost of incorporating being met by Pratt personally, and none of it being contributed either by Guardian Holding Corporation, by Johnston, its president, or so far as appears, by any other person. Following this, Pratt undertook to dispose of "Master" stock under a permit issued by the corporation commissioner of this state, and, having served as fiscal agent of the Guardian Holding Corporation for several years prior to 1930, and having formed acquaintance with many of its stockholders, he made a special canvass among them as likely prospective buyers of the new stock. He established offices of the "Master" company in the same suite with the "Guardian" company and there installed a broker named Kemp for the purpose of handling stock transactions. Kemp's commission, as well as those of salesmen that he employed, were paid by Master Holding Corporation and all salesmen were furnished with a special cost list to be used in closing a deal with a "Guardian" stockholder.

Mrs. McKinnie, respondent in this case, several years previously had purchased stock in the "Guardian" company through Pratt and in June of 1930 was the owner of 4,228 of its shares. On a five-to-three basis of acquisition, adopted by

the organizers of Master Holding Corporation, this stock of the par value of $42,280 would produce, with the addition of $33.34 cash, the even amount of $70,500 worth of "Master" stock at par. Accordingly, on June 30, 1930, respondent furnished Kemp with "buying" and "selling" orders and $33.34 in cash by means of which, together with an exchange of checks between himself and Master Holding Corporation, Kemp secured issuance on August 12, 1930, to Mrs. McKinnie of "Master" stock of the par value of $70,500. A year and a half later Mrs. McKinnie, having received meanwhile certain dividends from Master Holding Corporation, filed this action for damages, claiming that she had been imposed upon by fraudulent representations chargeable to the defendants, and secured judgment in the sum of $42,280, equaling the alleged par value of her "Guardian" stock as of August 14, 1930, and interest from that date to the date of the judgment, February 10, 1933, amounting to $7,275.66. The court also decreed, upon the prayer of Mrs. McKinnie's complaint, that the shares of stock of Master Holding Corporation that had been issued to her were null and void, finding that they had been issued in violation of the terms of the permit, in that no sale of "Master" stock had taken place, but merely a transfer for stock of Guardian Holding Corporation.

It did not appear at the trial whether the corporation commissioner took any steps to invalidate the issuance of "Master" stock, or whether the permit for selling stock was canceled. The invalidation in the instant case was decreed at the request of plaintiff, as has been said, and forms the basis of this action, grounded upon her receiving valueless stock through the fraud and manipulations of the defendants.

██ Up to the present moment Hamburg, the appealing defendant, has scarcely been mentioned in this recital, but, since there is a judgment now amounting to more than $50,000 entered against him in favor of Mrs. McKinnie, the interests of both these parties demand that we give their respective contentions most careful consideration. Hamburg never became a director of Master Holding Corporation and seems to have had nothing to do with the business of that corporation. He was not present at the directors' meeting of March 4, 1929, when Guardian Holding Corporation decided to notify its shareholders of the possibility of forming a new

corporation, nor did he appear as a witness in the trial of this case. It is the theory of respondent's counsel that Guardian Holding Corporation itself actually sponsored and carried through "the plan of organizing a Master Holding Corporation and inducting the stockholders of Guardian Holding Corporation, of which Mrs. McKinnie was one", and because Hamburg was a director of that company he must bear full responsibility for Mrs. McKinnie's loss. But we think that the Guardian Holding Corporation's minutes of March 4, 1929, and the company's letters that were introduced in evidence, show conclusively that the corporation which it proposed to sponsor and later decided not to, was not the same as the one organized by Pratt, individually. We have already noticed the official company announcements of December, 1929, and February, 1930, abandoning the plan of merger, at least temporarily; and there is no evidence that we can find in the record to indicate that that plan was ever resumed or carried through by Guardian Holding Corporation, or that the company adopted Pratt's plan or carried it through. The letter of February 14, 1930, had said: "You may . . . expect to receive in due time a further recommendation from your Board of Directors and in such manner that we may obtain your opinion and approval at that time." No such letter was ever sent. Respondent calls attention to the fact that Pratt wrote letters on Guardian Holding Corporation stationery to "Dear Friends" and "Dear Shareholder", signing them "Guardian Holding Corporation, by E. E. Pratt", and occasionally enclosing with them "literature", so called, these letters and literature containing most of the statements characterized in the complaint as false. On examination of them we find that many of these questioned statements had a basis in fact, and most, if not all, of the others reveal the author's roseate hopes for the future when returning prosperity was "just around the corner". For example, the plan to "secure for you the benefit which is rightfully yours, to increasing your security and earnings", may very well have been grounded on the genuine hope and belief that such would be the result, especially in view of the record of striking success that building and loan companies and corporations holding their securities had achieved in the preceding years. It does not appear from our reading of the

record that there was any scheme undertaken by Pratt or anyone else, to defraud anyone, for Pratt invested $10,000 of his own money in the purchase of the first stock issued by Master Holding Corporation on the same basis as every other purchaser, and the class B voting stock that was issued to him later "for organizing and promoting the organization", he assigned to the management without any profit to himself, giving substance to his statement, claimed as a misrepresentation that "all of the officers and directors had paid one hundred cents on the dollar for their shares".

The system by which Mrs. McKinnie's "Guardian" stock became "Master" stock involving the use of checks instead of coin and currency, was a transaction initiated and put through by Pratt individually and for the Master Holding Corporation, not by or for the Guardian Holding Corporation, or with the knowledge of any of its directors, so far as we are advised by the record before us. Respondent believes that Guardian Holding Corporation is chargeable with fraud because of the stationery and signature employed by Pratt; but he was at that time merely a stockholder of Guardian Holding Corporation (though, according to Johnston, he had been general manager in the year 1930) and was not authorized by the Guardian Holding Corporation or by its directorate to use the stationery, and did not sign his letters as a director or officer of Guardian Holding Corporation. He had access to the stationery, and apparently Johnston had some knowledge that the letters were being sent out; however, at that time, Pratt was not connected with Guardian Holding Corporation, but was manager of Master Holding Corporation and selling stock for that organization.

Respondent relies upon the case of *McClory* v. *Dodge*, 117 Cal. App. 148 [4 Pac. (2d) 223], where defendants, directors of Federal Securities Corporation, were held liable for loss suffered by plaintiff whose Union Mortgage Company stock was turned over to the accredited representative of Federal Securities Corporation, upon his promise to deliver in return for it 13,000 shares of Federal Securities stock. Instead, the Federal Securities Corporation sold the Union Mortgage stock, never delivered anything to plaintiff, and finally became bankrupt. As an argument to justify the judgment entered in this case against Master Holding Cor-

poration, or any of its directors, the McClory case may be in point, but we are not satisfied with it as an authority to bind Hamburg, who was never a director of Master Holding Corporation. It may be noted that at the time of the transaction mentioned in the McClory case, as in the case of *Vujacich* v. *Southern Commercial Co.*, 21 Cal. App. 439 [132 Pac. 80], the original provision of the Constitution (sec. 3, art. XII) fixing liability of directors "for all moneys embezzled or misappropriated by the officers" was in effect, and in both those cases there had been embezzlement, while here there was none. If it can be said that any of the letters and pamphlets which Pratt sent out were false in any material respect, still we can find no evidence in the record that appellant knew of the falsity or knowingly participated in any fraudulent conduct in connection with the distribution of such "literature". Lacking such proof, he could not justly be held liable, even if he were a director of Master Holding Corporation; *a fortiori,* he is not liable as a director of Guardian Holding Corporation.

It is our opinion that the finding of the trial court that appellant, as one of several defendants, made false representations to respondent with the intent and purpose of defrauding her is not supported by the evidence; therefore, the judgment against appellant Hamburg is reversed, and the trial court is directed to enter judgment in accordance with this decision.

York, Acting P. J., and Doran, J., concurred.