E. R. HAWKE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 76507, 76508.   Promulgated March 31, 1937.

*Alan W. Davidson, Esq.*, and *D. A. Sargent, C. P. A.*, for the petitioner.

*Dean P. Kimball, Esq.*, for the respondent.

## OPINION.

SMITH: The first question for our determination in these proceedings is whether, in computing petitioner's gain or loss on the sales in 1930 and 1931 of shares of stock of the J. C. Penney Co. which he had acquired in 1928 and 1929 under his contracts with the company, the basis is the amount of cash which he paid to the company for the shares, or their fair market value on the dates of acquisition. Section 113 (a) of the Revenue Act of 1928 provides the basis for determining gain or loss as follows:

(a) *Property acquired after February 28, 1913.*—The basis for determining the gain or loss from the sale or other disposition of property acquired after February 28, 1913, shall be the cost of such property; except that  *  *  *.

The exceptions stated are not applicable in these proceedings. The basis is "cost."

We must assume that Congress used the term "cost" in its commonly understood meaning as the amount of money which a man pays out in the acquisition of property. This is especially true where a man keeps his accounts and makes his returns, as did the petitioner, on a cash receipts and disbursements basis.

790

That the term "cost" ordinarily has this meaning is instanced by a supplemental stipulation of facts filed with this Board in these proceedings on July 21, 1936, a few days after hearing evidence in the case. Such supplemental stipulation reads as follows:

It is hereby stipulated by and between the parties hereto by their respective counsel, that if the Board finds that the petitioner is entitled to use values at dates of acquisition instead of cost for such of the stocks of J. C. Penney Company, sold in 1930 and 1931 as are involved herein, there is a loss from the sales of J. C. Penney Company stocks, including the shares herein involved, of $2,924.34 for the year 1930, and for 1931 there is a profit of $20,101.73, instead of profits of $79,584.34 and $214,774.25 for said years respectively, as determined by the respondent on the basis of cost; and if the Board finds that the basis to be used for the stocks of J. C. Penney Company involved herein is cost, then the profits from the sales of all J. C. Penney Company stocks, including the shares herein involved, are in the amounts determined by the Commissioner.

Of course, the Board in these proceedings must use "cost" as the basis; for that is the basis laid down by the statute. What the parties intended to stipulate as cost in the above stipulation was the amount paid by the petitioner to the J. C. Penney Co. for the shares. This amount was different from the fair market value.

Where property is acquired at a bargain price the amount paid therefor, nevertheless, represents the cost. *Taplin* v. *Commissioner* (C. C. A., 6th Cir.), 41 Fed. (2d) 454; *Commissioner* v. *Van Vorst* (C. C. A., 9th Cir.), 59 Fed. (2d) 677; *Bothwell* v. *Commissioner* (C. C. A., 10th Cir.), 77 Fed. (2d) 35; *Commissioner* v. *Farren* (C. C. A., 10th Cir.), 82 Fed. (2d) 141.

Where shares of stock are received as compensation for services they must be included in gross income at their fair market value in the year when received; for the statute requires that there shall be included in gross income: "gains, profits, and income derived from salaries, wages, or compensation for personal services, of whatever kind and in whatever form paid." (Sec. 22 (a), Revenue Act of 1928.) *Old Colony Trust Co.* v. *Commissioner* (C. C. A., 1st Cir.), 59 Fed. (2d) 168; *Crowell* v. *Commissioner* (C. C. A., 6th Cir.), 62 Fed. (2d) 51; *Olson* v. *Commissioner* (C. C. A., 7th Cir.), 67 Fed. (2d) 726; certiorari denied, 292 U. S. 637. It has also been held that, where a man as a part of his compensation is permitted to purchase stock from his employer at a price below the market and the employer takes as a deduction from gross income as an ordinary and necessary expense the differential between the fair market value of the stock and the cost of the stock to the employer, the amount of the differential is income to the petitioner in the year in which the stock was acquired. *Albert Russel Erskine*, 26 B. T. A. 147, and cases cited therein. In all such cases the cost to the taxpayer of the shares acquired is the fair market value of the shares. The taxpayer, being

in such a case taxed upon the differential in the year of the acquisition of the stock, is not to be taxed again upon the differential in the year of sale; for it must be assumed that it was not the intention of Congress that the taxpayer should be taxed twice in respect of the same income. This is in accordance with the Commissioner's regulations. Thus, in article 51 of Regulations 74, promulgated under the provisions of the Revenue Act of 1928, the respondent has made the following regulation under "What included in gross income":

Where property is sold by a corporation to a shareholder, or by an employer to an employee, for an amount substantially less than its fair market value, such shareholder of the corporation or such employee shall include in gross income the difference between the amount paid for the property and the amount of its fair market value. In computing the gain or loss from the subsequent sale of such property its cost shall be deemed to be its fair market value at the date of acquisition by the shareholder or the employee. * * *

From the position of this article in Regulations 74 there can be no doubt that it was the intention of the Commissioner to permit the addition to the cost basis prescribed by the statute of the differential only in a case where the taxpayer was taxed upon the differential in the year in which the shares were acquired. This is the interpretation placed upon the regulation in *Commissioner* v. *Farren, supra,* which we think is the correct interpretation.

The contentions of the petitioner upon this point derive some support from *Robinson* v. *Commissioner* (C. C. A., 6th Cir.), 59 Fed. (2d) 1008, and *Salvage* v. *Commissioner* (C. C. A., 2d Cir.), 76 Fed. (2d) 112. In both of these cases the taxpayers were permitted to purchase shares of stock at less than their fair market value. In the years in which they acquired the shares they did not report as income and were not taxed upon the differential between the amounts paid for the shares and their fair market value. Both courts held, however, reversing the Board, that upon a sale of their shares in later years the cost basis prescribed by the statute was not merely the outlay of cash made by the taxpayers in acquiring the stocks, but such amounts plus the differential. In the *Salvage* case it appeared that Salvage was permitted to acquire shares of Viscose Co. stock at a price of $100 per share when the fair market value of each share was $1,164.70. Under the contract by which he was permitted to acquire such shares the taxpayer agreed that he would not engage at any time throughout his life in any competing business without the company's consent. The court held that that was a valuable consideration and served to enhance the cost basis prescribed by the statute. The court relied upon article 31 of Regulations 65, which is identical with article 51 of Regulations 74 to the extent quoted above, and interpreted that regulation to give the taxpayer a stepped-up basis regardless of whether the taxpayer was

taxed upon the differential in the year when the shares were acquired or not. In this particular the court's opinion is in conflict with the opinion of the United States Circuit Court of Appeals for the Tenth Circuit in the *Farren* case.

The Government argued before the Circuit Court of Appeals for the Second Circuit in the *Salvage* case that the taxpayer was estopped to use a stepped-up basis upon the sale of the shares in 1929 because he had not returned as income the amount of the differential in his income tax return for 1922, the year in which the shares were acquired. In its opinion the Board did not base its holding upon the ground of estoppel and, indeed, did not refer to it. The court's decision in the *Salvage* case was affirmed by the Supreme Court in 297 U. S. 106. Apparently the only question before the Supreme Court on the Government's application for a writ of certiorari was whether the taxpayer was estopped to claim that the difference between the fair market value of the shares acquired in 1922 and the amount paid for the shares should be added to the cash paid by Salvage for the shares in determining the cost basis. Upon this point the Supreme Court stated:

We find no reason to disagree with the judgment of the court.

The defense of estoppel was not before the Board. Under what we regard as the correct practice, *General Utilities & Operating Co.* v. *Helvering*, 296 U. S. ——, 56 S. Ct. 185, 80 L. Ed. ——, decided December 9, 1935, the court should have passed the point. Furthermore, the facts disclosed give it no support.

Manifestly, the Supreme Court did not pass upon the question as to whether the cost to Salvage of his shares was the amount of cash which he paid for them or their fair market value at the date of acquisition.

In *Commissioner* v. *Farren, supra,* the respondent pleaded estoppel as he has done in these proceedings and the plea was sustained upon the authority of *Bothwell* v. *Commissioner, supra; Larkin* v. *United States* (C. C. A., 8th Cir.), 78 Fed. (2d) 951; *Fordyce* v. *Helvering* (C. C. A., 8th Cir.), 78 Fed. (2d) 525; *Crane* v. *Commissioner* (C. C. A., 1st Cir.), 68 Fed. (2d) 640; *Raleigh* v. *United States* (Ct. Cls.), 5 Fed. Supp. 622; and *Stearns* v. *United States*, 291 U. S. 54, 61. A writ of certiorari was granted by the Supreme Court in the *Farren* case, but the proceeding was dismissed by the Supreme Court on stipulation of counsel on October 26, 1936, 299 U. S. 617. In view of the statement made by the Supreme Court in the *Salvage* case that the facts disclosed by that case gave no support to the doctrine of estoppel, it is doubtful whether the plea is good in these proceedings.

The Board is of the opinion, however, that the cost to the petitioner of the J. C. Penney Co. shares sold during the taxable year, but purchased in 1928 and 1929, was the amounts of cash paid for the shares,

and that the petitioner is not entitled to any stepped-up basis on the theory that the differential between the amount paid for the shares and their fair market value was paid to him as compensation for services. They were not so understood either by the J. C. Penney Co. or the petitioner. The interpretation placed upon the contracts by the parties thereto is of great importance.

The facts in these proceedings clearly show that the petitioner had an option to purchase the shares of stock at prices to be fixed by the company. He was under no compulsion to exercise the option. The actual amount he paid for the shares is not open to dispute. His out-of-pocket cost of the shares was the amounts of cash which he paid for them and nothing more. If the term "cost" is to be given the connotation which we believe was intended by Congress and by the Commissioner's regulations, the amounts of cash paid out for the shares is the total cost basis.

In *Omaha National Bank* v. *Commissioner* (C. C. A., 8th Cir.), 75 Fed. (2d) 434, it was held that where the company's contract entitled the employee to buy 500 shares of stock at an agreed price and obligated the company to allow credits on the purchase price equal to dividends on 500 shares, and if after seven years the credits did not equal the purchase price, the company was nevertheless to deliver 100 shares, and if three years thereafter the credit still did not equal the purchase price of the remaining stock the company would deliver 150 additional shares, and did deliver the 150 shares during the taxable year, the taxable gain realized by the employee upon the receipt of such 150 shares was the amount of the credits made to the employee on the agreed purchase price of the 150 shares, and that the difference between the agreed purchase price and the fair market value of those shares was not income of the taxpayer because it was not a realized gain. Upon the principle announced in that case we think it would have to be held in this case that the excess of the fair market value over the agreed price was not compensation paid for services in the year when the shares were acquired. The determination in a given case must be made upon the facts present in the case. We are of the opinion that the facts which obtain in these proceedings do not warrant a conclusion that the cost basis laid down by the statute is any other than the amount of cash which the petitioner paid for his shares in 1928 and 1929.

The second question presented is whether the petitioner sustained a deductible loss in either 1930 or 1931 by reason of his transactions with E. E. Pratt. The certificate which the decedent received from the Master Holding Corporation, Ltd., in 1930, was void, since it was not issued in accordance with the permit which had been granted to the company for the sale of stock by the Department of Investment, Division of Corporations of the State of California. See

794

*People* v. *Stewart*, 115 Cal. App. 681; 2 Pac. (2d) 195; *Randall* v. *California Land Buyers' Syndicate*, 217 Cal. 594; 20 Pac. (2d) 331. In *McKinnie* v. *Guardian Holding Corporation*, 57 Pac. (2d) 209, it was stated:

\* \* \* the shares of stock of Master Holding Corporation that had been issued to her [plaintiff] were null and void, [the lower court] finding that they had been issued in violation of the terms of the permit, in that no sale of "Master" stock had taken place, but merely a transfer of stock of Guardian Holding Corporation.

The petitioner's tax returns for 1930 and 1931 were made upon a cash receipts and disbursements basis. Although he gave a promissory note to Pratt in 1930 in the amount of $50,000, he made no payment upon the note in that year. He can not, therefore, claim that he sustained any deductible loss in 1930.

Although in his income tax return for 1931 the petitioner did not claim any loss in respect of his payments of $30,803 on the note to Pratt in that year, he has made such claim in his petition in Docket No. 76507. The respondent contends that the petitioner is not entitled to claim a deduction for this loss in 1931, upon the ground that the petitioner did not learn that his certificate for the shares of stock was worthless until 1932 and that shortly thereafter he brought suit against Pratt and others for the recovery of the amount paid and the return of the promissory note, upon which a balance was still owing. His contention is that the petitioner can not take a loss until he can prove that he can not recover from Pratt.

We are of the opinion that there is no merit in this contention. The possibility of recovery from Pratt is too remote to warrant the postponement of the taking of the claimed loss. See *Commissioner* v. *Thatcher & Co.* (C. C. A., 2d Cir.), 76 Fed. (2d) 900, where the court held that a general building contractor's claim against defaulting subcontractors for damages in the amount by which the cost of completing their work exceeded the amount received by the general contractor was too contingent to be considered compensation for loss already realized by the taxpayer within the statute authorizing the deduction of losses not "compensated for by insurance or otherwise." Cf. *Carolina Contracting Co.*, 32 B. T. A. 1171, and cases therein relied upon.

The question of when a loss is sustained by a taxpayer is a question of fact. Because a taxpayer may in a subsequent year recoup a part of the loss is no ground for denying the deduction of the loss in a year when all the surrounding and attendant circumstances indicate a loss has been sustained. *United States* v. *S. S. White Dental Manufacturing Co. of Pennsylvania*, 274 U. S. 398. The plain facts are that the petitioner in 1931 paid $30,803 for shares of stock that were unlawfully issued and had no legal status. The amount paid was lost, we think, in 1931.

The facts in these proceedings upon the point in issue are similar to those which obtained in *Miniger* v. *Denman*, — Fed. Supp. — (U. S. Dist. Ct. No. Dist. Ohio). There the plaintiff owned stock which he had paid for in part by giving his demand note payable in 60 days. The court held "that to the extent that the purchase price of said stock is represented by said note, the loss thereon is properly deductible not at the time the stock became worthless, but at the time of payment of said note, if, when and to the extent that said note shall be paid." See also *Page* v. *Rhode Island Hospital Trust Co.*, 88 Fed. (2d) 192.

In *Burnet* v. *Huff*, 288 U. S. 156, it was held that, where one party had to make good the defalcation of another party, he was entitled to the deduction only in the year in which he actually paid the money, and not in the year when he discovered the loss.

In *Commissioner* v. *Highway Trailer Co.* (C. C. A., 7th Cir.), 72 Fed. (2d) 913, it was held that a taxpayer who in 1921 suffered a loss by fire which was not covered by insurance and recovered judgment for damages for a part of the loss, which judgment was reversed by the State Supreme Court in 1925, was not entitled to deduct such loss for 1925, since the entire deduction occurred in the year 1921, which was the only year in which the loss could be taken.

The petitioner is entitled to the deduction from gross income of 1931 of $30,803 representing the payment made on his note in that year. Any amount recovered by him in subsequent years will be taxable in the year in which the recovery is made.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

ARUNDELL, VAN FOSSAN, TURNER, ARNOLD, and DISNEY concur only in the result.

LEECH dissents on the first point.