Andrew Jackson Sailer and Esther Cherry Sailer v. Commissioner.
Sailer v. Commissioner
Docket No. 13487.
United States Tax Court
1948 Tax Ct. Memo LEXIS 185; 7 T.C.M. (CCH) 300; T.C.M. (RIA) 48085; May 20, 1948
*185 Bad debts: Worthless notes. - Collateral Serial 6% coupon notes of the Level Club, Inc., became worthless prior to the year 1942 where the organization was adjudicated a bankrupt in 1930, although the New York Court of Appeals did not deny leave to appeal from an adverse judgment until 1942. Palmer Watson, Esq., 1010 Real Estate Trust Bldg., Philadelphia, Pa., for the petitioners. Karl W. Windhorst, Esq., for the respondent. LEECH
Memorandum Findings of Fact and Opinion LEECH, Judge: This proceeding involves a deficiency in income tax for the year 1943 in the amount of $230.76. The sole issue is whether certain coupon notes became worthless in the taxable year 1942. Findings of Fact The case was submitted upon a stipulation of facts, oral testimony and exhibits. The stipulation of facts, *186 so far as pertinent, follows: 1. In the year 1928, Level Club, Inc., a non-profit association incorporated under the Membership Laws of the State of New York in January, 1920, issued $750,000.00 Collateral Serial 6% Coupon Notes, secured by a second mortgage upon its club house located at 253-267 West Seventy-third Street, New York City and by an assignment of existing subscriptions of members to debenture bonds as well as subscriptions to be thereafter received. The issue of notes was sold outright, by Level Club, Inc. to Sawyer Brothers, Inc. at 88% of their face value under a written contract of sale dated January 31, 1928. Sawyer Brothers, Inc. sold one-half of the notes to Cullen & Drew on March 14, 1928. Both of said firms were investment brokers and the respective allotments of notes thus purchased by them were resold for their own account and profit to individuals and institutions, either for investment purposes or for future resale. 2. That on April 6, 1928, Sawyer Brothers, Inc. sold to Andrew Jackson Sailer, trading as A. J. Sailer & Company, $10,000 par value Level Club, Inc. Collateral Serial 6% coupon notes for which he paid $9,994.10. 3. On December 15, 1928, Level *187 Club, Inc. defaulted in the payment of interest on said notes, referred to in paragraphs 1 and 2 hereinabove. Thereafter on November 5, 1930, Level Club, Inc. was adjudicated a bankrupt. The premises of Level Club, Inc. at 253-267 West Seventy-third Street, New York City, were sold on May 18, 1931 to the First Mortgage Bondholders Committee upon foreclosure of the first mortgage. Subsequent thereto, Level Club, Inc. had no assets and was unable to meet any part of its obligation represented by the Collateral Serial 6% Coupon Notes referred to in paragraphs 1 and 2 hereinabove. 4. A Second Mortgage Noteholders Protective Committee of Level Club, Inc. was formed in 1929 and Andrew Jackson Sailer deposited said notes referred to in paragraph 2 hereinabove at the Liberty National Bank and Trust Company in New York on August 2, 1929. 5. On August 2, 1929, a certificate of deposit relating to the notes referred to in paragraph 2 hereinabove was issued to Andrew Jackson Sailer by the Liberty National Bank and Trust Company in New York as a depository under an agreement dated May 22, 1929 by William F. Fowler, Chairman; John G. Clute, Richard S. Cullen, Stanley C. Eaton and Natianiel F. *188 Glidden, as a committee, and certain holders of the Collateral Serial 6% Coupon Notes of Level Club, Inc. 6. On October 16, 1930, a suit in equity was brought by certain holders of the notes referred to in paragraph 1 hereinabove in the Supreme Court of New York County, New York, against Level Club, Inc., its officers and directors and the Irving Trust Company, individually and as trustee with respect to the second mortgage referred to in paragraph 1 hereinabove. The plaintiffs, repesenting the holders of notes aggregating $650,000.00, demanded in said suit, as against the Level Club, Inc., a rescission of the transactions whereby they became purchasers of the notes and a recovery of the amounts paid by them. As against the individual defendants the action was one in fraud and money damages were sought as against such defendants upon the theory that plaintiffs were induced to purchase the notes by false statements emanating from the directors and set forth in a letter issued by Level Club, Inc., over the signature of its president and that the individual defendants, the officers and directors of the Level Club, Inc., were responsible for its publication by the security brokers who *189 sold the issue to the public. The liability of the Irving Trust Company, as trustee under the mortgage securing the notes, was predicated upon the claim that it had knowledge of the fact that certain of the statements made in the letter forming part of the prospectus issued by the brokers were false, and continued to act as trustee and aided in carrying out the fraud, notwithstanding such knowledge to the damage of the plaintiffs who thereafter purchased notes. 7. On June 9, 1932, Andrew Jackson Sailer was joined as a plaintiff in the suit in equity referred to in paragraph 6 hereinabove. On said date and at all times thereafter, any money judgment against Level Club, Inc., if obtained by the plaintiffs in said suit, was uncollectible. He agreed to become a party to said suit on the condition that he would not be liable for any expense connected therewith, unless there were a recovery in money, in which event he was to pay one-fourth of his share of the recovered amount. The plaintiffs, other than Andrew Jackson Sailer, in contemplation of instituting the suit referred to in paragraph 6 hereinabove had entered into an agreement dated May 14, 1930 with Messrs. Satterlee and Canfield, *190 New York City, counsel to the Second Mortgage Noteholders Protective Committee, under the terms of which their monetary liability was limited to 5% of the face amount of the notes they deposited with the Committee. 8. The suit referred to in paragraph 6 hereinabove was dismissed by the New York Supreme Court. An appeal from the decision dismissing said suit was taken by Andrew Jackson Sailer, inter alios, to the New York Supreme Court, Appellate Division, the decision of the New York Supreme Court was reversed and a new trial ordered pursuant to the opinion filed on June 8, 1934 in the case of First National Bank of Hempstead, N. Y. et al. v. Level Club, Inc. et al., the same being reported in 241 App. Div., N. Y. 433. The said case was retried in the New York Supreme Court and was again dismissed. An appeal from the decision dismissing the suit was taken by Andrew Jackson Sailer, inter alios, to the said Supreme Court, Appellate Division, and, in an opinion filed by said Court on May 27, 1938, the same being reported in the case of First National Bank of Hempstead et al. v. Level Club, Inc. et al., 254 App. Div., N. Y. 255, the decision of the lower court was upheld. An appeal from *191 this decision was taken by Andrew Jackson Sailer, inter alios, to the New York Court of Appeals and on December 29, 1939 judgment was affirmed, as reported in First National Bank of Hempstead, et al. v. Level Club, Inc. et al., 282 N. Y. 577. On May 20, 1940, a motion was filed in the said Court of Appeals on behalf of Andrew Jackson Sailer, inter alios, to amend the remittitur, which motion was denied on May 28, 1940, as reported in First National Bank of Hempstead, N. Y. et al. v. Level Club, Inc. et al., 283 N. Y. 641. 9. On October 18, 1940, following the determination of the suit referred to in paragraphs 6 and 8 hereinabove, an action for an accounting was instituted by the trustees of the Second Mortgage Noteholders Protective Committee, representing holders of notes aggregating $650,000.00, against the Irving Trust Company as trustees under the mortgage securing the notes referred to in paragraph 1 hereinabove. The said Irving Trust Company as trustee under the January, 1941 and annexed thereto an account showing total receipts of $180,269.06 and disbursements of $180,352.25. 10. Andrew Jackson Sailer in connecnection with said suit referred to *192 in paragraph 9 hereinabove was not liable for any expense, unless there were a recovery in money in which event he was to pay one-fourth of his share of the recovered amount. The liability of the noteholders other than Andrew Jackson Sailer was governed by the terms of the agreement dated May 14, 1930, referred to in paragraph 7 hereinabove. 11. The trustees contended in the suit, referred to in paragraph 9 hereinabove, that certain disbursements had been improperly made and that the noteholders were entitled to $46,774.17 with interest thereon from December 15, 1931. 12. The suit referred to in paragraph 9 hereinabove was tried on May 20, 1941 and resulted in a judgment by the New York Supreme Court in favor of the plaintiffs with a direction that an account be rendered and the matter was referred to a referee. On September 29, 1941, the referee rendered a report in favor of the defendant holding that said disbursements were properly charged to the funds in its hands, which report was approved by the New York Supreme Court. The trustees appealed to the New York Supreme Court, Appellate Division, which court affirmed the judgment of the trial court by an order dated June 12, 1942 and *193 judgment of the affirmation was entered on such order on June 17, 1942. A motion for leave to appeal to the New York Court of Appeals was denied by said Supreme Court, Appellate Division, by an order dated July 3, 1942. A similar motion was made to the said Court of Appeals on October 15, 1942 which denied the leave to appeal. The following additional facts are found from the evidence: The Irving Trust Company, as trustee, at the end of the year 1936 had a net credit balance in the amount of $7,826.40; and at the end of July 1940, a debit balance in the amount of $83.19. Under date of May 14, 1932, the Secretary of the Second Mortgage Noteholders Protective Committee wrote petitioner a letter which contained the following paragraph: "In November 1930, the Level Club was adjudicated a bankrupt and counsel for the Committee has recently examined the receiver in bankruptcy of the Club and has learned that there are, as a practical matter, no assets of the Club existing. Indeed the first mortgage securing an issue of securities prior to these notes was a year or so ago foreclosed, at which time the Club property was sold to the first mortgagees. The result is that so far as the *194 Committee can see your ten notes, as obligations of the Level Club, are utterly and hopefully [sic] worthless." In a letter dated November 12, 1941, which was received by Palmer Watson, Esq., on behalf of the petitioner Andrew Jackson Sailer (hereinafter referred to as "petitioner") from the Second Mortgage Noteholders Protective Committee, it was stated with respect to the accounting suit as follows: "Our Counsel have advised us that an appeal should be taken to the Appellate Division and that the same has been duly noted. Indeed, the taking of this appeal appears to be the only course open to us. Judgments for costs already outstanding ($564.16 in the fraud action and $1,057.82 in the accounting action) total $1,603.98, for which the Noteholders are liable. The maximum amount which will be risked in prosecuting the appeal will not, it is estimated, exceed $500, and the Chairman of your Committee has personally volunteered to advance up to that sum to meet the expenses of the appeal. If we are successful on the appeal, a substantial sum will be recovered. "Furthermore, when the fraud action was instituted in 1930, the following agreement was made with Counsel in respect to *195 their compensation: "'The monetary liability of the noteholders shall be limited to 5% of the face amount of the notes deposited, or approximately $26,000, of which $23,000 shall be the fee of Counsel, to be paid regardless of the outcome of the suit, and approximately $3,000 shall be reserved as a sum to cover payment of costs and disbursements.' "In fact, however, the depositing Noteholders have paid in a total of only $24,190. Expenses to date have aggregated more than $20,100, and Counsel have received about $4,000 for their twelve years of labor. "Counsel have generously agreed to make no additional charge for their work in the accounting action, including the pending appeal therein. "Consequently, in the event that our appeal is upheld, a fund will be available to pay the outstanding judgments for costs and all other expenses of litigations, and, possibly, to make a cash distribution to the Noteholders." The petitioner at no time incurred any expense in connection with either the suit for rescission and damages instituted in 1930 or the accounting suit instituted in 1940. Opinion The sole question presented is whether collateral serial 6% coupon notes issued by *196 the Level Club, Inc., purchased by the petitioner in 1928 for the sum of $9,994.10, became worthless in the year 1942. There is no dispute that petitioner sustained a loss of $9,994.10, nor as to the manner in which the loss was claimed, i.e., a $1,000 capital loss in 1942 and a $1,000 carry-over to 1943, if, in fact, the loss was sustained in 1942. The pertinent statute is section 23 (k) (2) and (3) of the Internal Revenue Code. [1]
*197 The year in which bonds become worthless presents a question of fact. Petitioner has the burden of proof. To entitle petitioner to a deduction on account of the worthlessness of securities as defined in code section 23 (k) (3), the record must show that the bonds became worthless in the taxable year the deduction is claimed. San Joaquin Brick Co. v. Commissioner, 130 Fed. (2d) 220; Bartlett v. Commissioner, 114 Fed. (2d) 634. And to do that, it is imperative that the evidence show that the bonds had some value at the beginning of the taxable year. We think the evidence fails to establish this necessary premise. As we view the record the notes in question had no potential or intrinsic value long prior to the year 1942. The notes were secured by a second mortgage on the property of the Level Club, and by certain subscription agreements. On May 18, 1931, the building was sold to the first mortgagees upon foreclosure of the first mortgage. On November 5, 1930, the Level Club was adjudicated a bankrupt. On January 5, 1932, the Court of Appeals of New York, in the case of Eaton v. Reich, 258 N. Y. 202, 179 N.E. 385, held that the subscription agreements *198 securing the notes were unenforceable unless special damages could be shown. It does not appear that any attempt was made to make out a case of special damages. In July 1940, the account of the trustee shows a debit balance in its favor. As early as May 14, 1932, the Second Mortgage Noteholders Protective Committee expressed the view that the "notes, as obligations of the Level Club, are utterly and hopefully [sic] worthless". Petitioner apparently relies upon the fact that the accounting suit to surcharge the trustee was not finally concluded until October 15, 1942, when the New York Court of Appeals denied leave to appeal from an adverse judgment, furnishes the identifiable event fixing the time the loss was sustained. This position is untenable. Where the surrounding circumstances indicate a loss has been sustained, the existence of a collateral suit against third parties is too contingent and remote to warrant the postponement of the taking of the loss. Boehm v. Commissioner, 326 U.S. 287; E. R. Hawke, 35 B.T.A. 784; cf. Charles A. Dana, 6 T.C. 177. Petitioner has failed to establish that the collateral notes in question became worthless *199 in the year 1942. The respondent is sustained. Decision will be entered for the respondent. Footnotes
1. SEC. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions: * * *
(k) Bad Debts. - * * *
(2) Securities Becoming Worthless - If any securities (as defined in paragraph (3) of this subsection) become worthless within the taxable year and are capital assets, the loss resulting therefrom shall, in the case of a taxpayer other than a bank, as defined in section 104, for the purposes of this chapter, be considered as a loss from the sale or exchange on the last day of such taxable year, of capital assets. (3) Definition of Securities. - As used in paragraphs (1), (2), and (4) of this subsection the term "securities" means bonds, debentures, notes, or certificates, or other evidences of indebtedness, issued by any corporation (including those issued by a government or political subdivision thereof), with interest coupons or in registered form.↩